[Civ. No. 3089.  Second Appellate District, Division Two.—June 21,
1920.]

## THE PEOPLE, Respondent, v. DOC SMITH et al., Appellants.

[1] RED-LIGHT ABATEMENT ACT—CONFLICTING EVIDENCE—CREDIBILITY
OF WITNESSES—APPEAL.—In an action to abate a nuisance under
the provisions of the Red-light Abatement Act, the trial court
having resolved a sharp conflict in the evidence as to the reputa-
tion of the place in favor of the plaintiff, and there having been
sufficient testimony, if believed by it, to justify the conclusion,
the appellate court cannot pass upon the credibility of the wit-
nesses.

[2] ID.—SINGLE ACT OF PROSTITUTION—DEDUCTIONS FROM ATTENDANT
CIRCUMSTANCES—EXISTENCE OF NUISANCE.—In such an action,
conceding that one act of assignation or prostitution does not
constitute a nuisance under the provisions of the Red-light Abate-

ment Act, nevertheless the deductions to be drawn from a single act, when considered in connection with all the attendant circumstances, may properly form the basis for finding that the practice is habitual.

[3] Id.—Judgment—Segregation of Portion of Premises Constituting Nuisance.—In such an action, where the premises proceeded against, consisting of a dining-room and grill and an inn above, are covered by one roof, and are under one management and conducted as one business, the trial court is not required to designate or segregate with particularity the portions of the establishment which constitute the nuisance but may include the entire premises in the decree.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bordwell & Mathews for Appellant P. A. Stanton.

G. M. Spicer for Appellants Doc Smith and F. C. Blankenship.

L. A. West, District Attorney, and W. F. Menton and Alex P. Nelson, Deputies District Attorney, for Respondent.

WELLER, J.—This action was commenced under the Redlight Abatement Act [Stats. 1913, p. 20] against the owners and proprietors of a place in Seal Beach known as the Seal Cafe and Seal Inn.

The complaint alleges, and the court finds, that the premises were used for the purpose of lewdness, assignation, and prostitution, judgment was entered in favor of the plaintiff, and from that judgment this appeal is prosecuted.

Much of the argument advanced by appellants is disposed of in the opinion this day filed in the case of *People* v. *Bayside Land Co. et al., post*, p. 257, [191 Pac. 994], and need not receive further notice here.

The main point urged by appellants as ground for reversal is that the evidence is insufficient to justify the findings regarding the use of the property. The building in question was a two-story structure, the lower floor of which was used as a cafe where meals and drinks were served, and music furnished that the patrons might dance. In a separate por-

tion of the lower floor was a grill-room, from which a stair-
way led to the floor above. The second story was divided
into sixteen bedrooms, for the accommodation of guests. At
the times to which the testimony refers several of the rooms
were occupied by permanent roomers and a few were re-
served for transients.

Witnesses for the prosecution related that nine persons,
four of them employed by the district attorney, met at the
Tower Cafe, a short distance from the premises in contro-
versy. At the suggestion of one of the women, they agreed
to visit the Seal Inn for the purpose of obtaining rooms, and,
as she put it, "have a real party." Agreeably to this ap-
pointment, they repaired to the Seal Cafe, and there partook
of liquid refreshments, and some of them danced together.
Arrangements were made by this woman for two rooms for
the party, and, on ascending the stairs, they were met by
defendant Smith, one of the proprietors, who asked them
to register. One of the men inquired how that was to be
done, and another replied: "Oh, just pair off any old way;
it doesn't make any difference; we will sign up." This was
done, each man registering a woman and himself as man
and wife, under assumed names. Eight persons were as-
signed to the two rooms, but shortly afterward Smith notified
them that he had procured another room, which was ac-
cepted. Two of the couples then paired off, one pair going
to each of two rooms, where they divested themselves of
their clothing and went to bed together. The four others,
three of whom were the investigators, remained in the third
room. Thereupon the woman who had suggested the "party"
proposed that she would undress for two dollars, and ap-
parently without waiting for an acceptance of her proposal
did so, with the exception of her undergarments. In this
condition, she proceeded to indulge in what may be termed
her idea of a "real party," and raised such a commotion
that the housemaid came into the room and told her she
should be more quiet.

This was the condition of affairs when the district attorney
arrived on the scene and arrested the participants in the
revelry.

[1] The maid testified that frequently the rooms were
occupied by more than one couple during the night, usually

Saturday and Sunday, and that she was sometimes called on to make up rooms which had been used, not infrequently as late as 1 o'clock in the morning, and that they were thereafter occupied by others. Several witnesses stated that the reputation of the place was bad in the immediate vicinity of its location and over a considerable area in addition.

The defendant Smith said that when the nine persons presented themselves for assignment to rooms he inquired if they were all married, and was informed that they were, and upon such assurance he assigned them to the rooms. The defense introduced testimony to the good reputation of the place and the orderly conduct of its patrons.

This sharp conflict of the evidence was resolved in favor of the plaintiff by the trial court. There was sufficient testimony, if believed by it, to justify the conclusion, and we cannot pass upon the credibility of witnesses.

[2] It is asserted by appellants that one act of assignation or prostitution does not constitute a nuisance under the provisions of the act. Conceding this to be the law, nevertheless the deductions to be drawn from a single act, when considered in connection with all the attendant circumstances, may properly form the basis for finding that the practice is habitual. We must assume, in support of the judgment, that the court below believed the statements of the witnesses that it made no difference how they were registered, and that the defendant acquiesced in that assertion. Moreover, he admits that he put eight people in two rooms; and even though they were all married, it is considered somewhat unconventional, at least, for two married couples to occupy the same bed at the same time. The fact that these people showed a willingness to share the privacy of their sleeping quarters should have aroused his suspicion as to the purity of their intentions. Such laxness of management and disregard of the moral code instanced on one occasion might reasonably lead to the inference that such occurrences were common.

[3] Objection is made to the inclusion in the decree of the Seal Cafe, or the lower portion of the building, as no acts of lewdness are shown to have taken place there. Entrance to the upper floor was gained through the grill, which was separated from the main dining-room by the

kitchen, and was accessible to the street through an outside entrance. As we understand the situation, the dining-room and grill and the inn above were covered by one roof, under one management and conducted as one business, and we do not believe that the court is required to designate or segregate with particularity the portions of an entire establishment which constitute the nuisance. The kitchen might be innocuous in itself, but is a part of the premises, and accessory to them, and may properly be included in the decree.

After carefully reviewing the record we are of the opinion that no error was committed by the trial court.

Judgment affirmed.

Finlayson, P. J., and Thomas J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 21, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 19, 1920.

All the Justices concurred, except Sloane, J., who was absent.